**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JOHN L. ROUNDY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 12 C 1159** |
| v. | ) | |
| | ) | **Magistrate Judge** |
| **CAROLYN W. COLVIN,** | ) | **Maria Valdez** |
| **Acting Commisioner of** | ) | |
| **Social Security,**[1] | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff John L. Roundy's claim for Supplemental Security Income. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Roundy's motion for summary judgment [Doc. No. 15] is denied.

## BACKGROUND

### I. PROCEDURAL HISTORY

On August 27, 2009, Roundy filed a claim for Supplemental Security Income, alleging a disability onset date of June 24, 2009. The claim was denied initially on December 10, 2009 and upon reconsideration on May 20, 2010. He timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on April 12,

---

[1] Carolyn W. Colvin is substituted for her predecessor, Michael J. Astrue, pursuant to Federal Rule of Civil Procedure 25(d).

2011. Roundy personally appeared and testified at the hearing and was represented

by counsel. Vocational expert Richard Hamersma also testified at the hearing.

On May 6, 2011, the ALJ denied Roundy's claim for Supplemental Security

Income, finding him not disabled under the Social Security Act. On June 16, 2011,

the Social Security Administration Appeals Council denied Roundy's request for

review, leaving the ALJ's decision as the final decision of the Commissioner and,

therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v.*

*Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II.    FACTUAL BACKGROUND[2]

### A.    Background

Roundy was born on October 14, 1966 and was forty-four years old at the

time of the ALJ hearing. He lived in an apartment with his girlfriend and then

twelve year-old son. He completed schooling through the ninth grade and has no

past relevant work or substantial gainful activity. Roundy claims disability due to

impaired function on his right side stemming from a stroke/cerebrovascular

accident ("CVA"), as well as mental impairments.

### B.    Medical Evidence

#### a.    *Physical Impairments*

Roundy suffered a stroke in June 2009 and was admitted to the University of

Chicago Medical Center ("UCMC"). A July 10, 2009 physical indicated that Roundy

retained a right facial droop, mild speech impairment, and an antalgic gait. A

physician at the UCMC Neurology Clinic noted on July 27, 2009 that Plaintiff had

---

[2] The following facts from the parties' submissions are undisputed unless otherwise noted.

decreased finger tap of the right hand, marked dysmetria with the right arm, a gait with a limp, and required the use of a cane for ambulation.

Similarly, on November 19, 2009, a consultative examination by Dr. Manharlal Tanna concluded that Plaintiff had an abnormal gait as a result of a limp on the right side, and he required a cane for ambulation. The examination further revealed that Plaintiff's right hand had an 80% ability to make a fist, a 4/5 for grip, and fine dexterity was abnormal with mild difficulties.

Non-examining State agency reviewer Dr. Ernst Bone concluded on December 8, 2009 that Plaintiff can perform sedentary work with the need for an assistive device when emulating.

On August 8, 2010, Roundy went to the UCMC emergency room complaining of chest pains that lasted for two weeks, and he later underwent cardiac studies as a result. He could not complete an exercise stress test as a result of being unable to walk on the treadmill, but he was diagnosed with cerebrovascular disease, borderline-abnormal myocardial perfusion scintigraphy and left ventricular hypertrophy ("LVH").

Roundy saw Dr. John Schumann at the Booker Community Health Center on September 3, 2010, and he was assessed with CVA, palpitations, opioid dependence, and hypercholesterolemia. Dr. Schumann saw Plaintiff again on January 7, 2011, when he noted right side weakness and memory impairment. Roundy was assessed with status post lacunar thalamic CVA right weakness, some memory impairment, methadone maintenance, hypertension, and controlled hypercholesterol. Roundy

saw Dr. Schumann again on March 4, 2011, reporting residual right upper and lower extremity weakness. Dr. Schumann's notes found that Roundy had a weak grip in his right hand, with loss of fine motor grasping, minimal edema in his right leg, and an antalgic gait to the right.

### b. *Mental Impairments*

A psychiatric evaluation of Plaintiff performed on March 20, 2010 by Dr. John Franklin noted Plaintiff reported feeling sad most of the time with a sense of hopelessness, social withdrawal, and some suicidal thoughts. Roundy was diagnosed with major depression without psychosis, with stressors including health problems, a history of drug abuse and legal problems in the past as well as depression and a Global Assessment of Functioning ("GAF") score of 45.

Non-examining State agency reviewer Dr. DiFonso completed a Psychiatric Review Technique Form on May 10, 2010, which concluded that Plaintiff has major depression without psychosis; mild restrictions in activities of daily living; and moderate difficulties in maintaining social functioning and maintaining concentration, persistence, or pace. He further concluded that Roundy had moderate limitations in his ability to understand, remember, and carry out detailed instructions; to interact appropriately with the general public; and to accept instructions and respond appropriately to criticism from superiors. Dr. DiFonso found Plaintiff to be partially credible with respect to his depression symptoms, since prior to the stroke he was active and social.

4

## C.    Plaintiff's Testimony

Roundy testified that he suffers from impaired function on his right side. He cannot lift anything heavy with his right hand or stand for more than thirty minutes without needing to sit down and rest. He needs assistance from his girlfriend in performing everyday tasks, including washing and dressing, cooking, cleaning, and other household activities. He tries to help with the dishes, but he cannot do so for more than fifteen to thirty minutes before he needs to rest for three to four hours. Roundy suffers from depression, sometimes feeling that he would be better off dead. He claims that he has even put a gun to his head in the past. He has mental health therapy approximately once a month and physical therapy twice a month.

## D.    Vocational Expert Testimony

The ALJ asked Vocational Expert ("VE") Richard Hamersma whether any jobs would be available to a hypothetical person with the same age, education, and background as the Plaintiff, who is able to do sedentary work with the aid of an assistive device when ambulating, occasional postural limitations except no climbing of ladders, ropes, or scaffolds, and frequent handling or fingering with the right-hand. The VE said that the person could perform work as a cashier (4,000 jobs), an inspector (2,000 jobs), and hand packager (1,000 jobs).

Next, the ALJ posed a second hypothetical adding moderate limitations in the person's ability to maintain concentration, persistence, or pace; his ability to perform one- and two-step simple tasks; to understand, remember, and follow

simple but not detailed instructions; and limited to only occasional interaction with the general public and supervisors. The VE responded that unskilled jobs could still be available as an assembler (2,000 jobs). In a third hypothetical situation, the ALJ added that the person would be limited to only occasional handling or fingering with the right, dominant hand. The VE concluded that the additional limitation would rule out all competitive employment. Finally the ALJ posed a hypothetical in which the person could frequently handle or finger with his right hand but would be unable to maintain concentration for two hours out of an eight-hour workday. The VE again stated that the additional limitation would rule out all competitive employment.

**E.    ALJ Decision**

The ALJ found at step one that Roundy had not engaged in substantial gainful activity since his application date of August 27, 2009. At step two, the ALJ concluded that Roundy had severe impairments of status post stroke/CVA and major depression without psychosis. The ALJ concluded at step three that the impairments, alone or in combination, do not meet or medically equal a Listing. The ALJ next determined that Roundy retained the residual functional capacity ("RFC") to perform less than the full range of sedentary work. Specifically, the ALJ opined that Roundy can lift up to ten pounds occasionally; stand or walk for approximately two hours in an eight-hour workday; sit for approximately six hours in an eight-hour workday; never climb ladders; occasionally climb ramps or stairs; occasionally balance, stoop, crouch, kneel, and crawl; frequently finger (fine manipulation) with

his right hand; frequently handle objects (gross manipulation) with his right hand; and that he would require the use of an assistive device for ambulation. The ALJ found that Roundy could perform only simple one- or two-step tasks; understand, remember, and carry out simple instructions but not detailed instructions; and have occasional interaction with public and with supervisors. At step five, based upon the VE's testimony and Roundy's age, education, work experience and RFC, the ALJ concluded that Roundy can perform jobs existing in significant numbers in the national economy, leading to a finding that he is not disabled.

## **DISCUSSION**

### I. **ALJ LEGAL STANDARD**

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform her former occupation? and (5) Is the claimant unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The claimant bears the burden of proof at steps 1–4. *Id.* Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II.    JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841.

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning

behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a claimant, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

## III.   ANALYSIS

Roundy argues that the ALJ's decision was in error because: (1) he gave insufficient weight to the opinion of Roundy's treating physicians as required by

9

SSR 96-2p;[3] (2) he did not consider the combination of Plaintiff's impairments in making his RFC determination; (3) the ALJ improperly assessed Roundy's credibility; and (4) the ALJ came to an erroneous step five determination.

### A.     Treating Physician Rule

Roundy first argues that the ALJ failed to follow the "treating physician rule" by not appropriately weighing the opinion of his treating physician, Dr. Schumann. In determining that Roundy could perform frequent fine and gross motor grasping with the right hand, the ALJ discounted Dr. Schaumann's March 4, 2011 opinion that Plaintiff had a weak right hand grasp along with the loss of fine motor grasping in that hand. Plaintiff claims that the ALJ arbitrarily gave the greatest weight to the State agency physicians' reports of 2009 rather than the more recent report of his treating physician. Moreover, Plaintiff argues that the State agency reviewers placed undue emphasis on the fact that Plaintiff was generally improving, which does not by itself suggest that he was not disabled.

The Commissioner responds that Dr. Schumann's single notation about a weak grip and loss of fine motor skills for grasping was not supported by objective medical findings and was inconsistent with the record as a whole.

An ALJ must give controlling weight to a treating physician's opinion if the opinion is both "well-supported" and "not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. § 404.1527(c); *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). The ALJ must also "offer good reasons for discounting" the

---

[3] Interpretive rules, such as Social Security Regulations ("SSR"), do not have force of law, but they are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1); *accord Lauer v. Apfel*, 169 F.3d 489, 492 (7th Cir. 1999).

opinion of a treating physician. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations omitted); *Scott*, 647 F.3d at 739. And even if a treater's opinion is not given controlling weight, an ALJ must still determine what value the assessment does merit. *Scott*, 647 F.3d at 740; *Campbell*, 627 F.3d at 308. The regulations require the ALJ to consider a variety of factors, including: (1) the length, nature, and extent of the treatment relationship; (2) the frequency of examination; (3) the physician's specialty; (4) the types of tests performed; and (5) the consistency and support for the physician's opinion. *See id.*

The Court concludes that substantial evidence supports the ALJ's decision not to give controlling weight to Dr. Schumann's notation. There is no indication in the treatment notes that the finding was based on any objective testing, and there is no other evidence in the record suggesting substantial limitations in Roundy's fine manipulations in his right hand. Indeed, when Roundy presented to the emergency room with stroke symptoms in June 2009, his grip strength was normal, and in November 2009, Dr. Tanna noted only mild difficulties in Roundy's fine dexterity. Finally, although Dr. Schumann's notes from the March 2011 visit indicate that he was to fill out disability evaluation paperwork, the ALJ noted that the evaluation was never sent to the Social Security Administration. Thus, there is no evidence in the record suggesting whether Dr. Schumann believed the alleged impairment in motor function would have an effect on any work-related activities.

**B.    Combination of Impairments**

Plaintiff next contends that the ALJ failed to consider the combined effects of Plaintiff's depression, LVH, and CVA. According to Plaintiff, the combination of impairments renders him incapable of prolonged activity that could strain his heart, including standing or walking for long periods of time, and that he cannot interact with others. Of particular importance to Plaintiff is the fact that the ALJ failed to address Plaintiff's GAF score of 45, which "signifies serious symptoms or serious impairment with social and occupational functioning." (Pl.'s Br. at 11.) Roundy argues that his GAF score shows serious or marked limitations, although the ALJ only found moderate limitations in his ability to maintain concentration, persistence, or pace. In addition, the ALJ did not put Roundy's moderate limitations on the ability to maintain concentration, persistence, or pace into vocational terms, and those limitations were not considered by the VE in his response to the ALJ's hypothetical questions.

The Commissioner responds that Plaintiff fails to specify any additional functional limitations resulting from his combination of impairments and instead only conclusorily states that he is incapable of prolonged activity. As for the GAF score, the Commissioner argues that it was not error for the ALJ not to specifically comment on it, because Plaintiff did not have a history of formal psychiatric treatment or hospitalizations, and he was not on psychotropic medication.

The ALJ discussed all of the objective evidence in the record, and as the Commissioner points out, Plaintiff has not identified any specific work-related restrictions caused by his combination of impairments other than those included in the ALJ's RFC. For example, Plaintiff offers no argument related to any specific effects caused by his LVH, only that the diagnosis was made. The Court therefore concludes that Plaintiff has failed to demonstrate that the ALJ's finding related to his combination of impairments was not supported by substantial evidence.

C.    **Credibility**

Plaintiff next takes issue with the ALJ's determination that he was not fully credible. When assessing the credibility of an individual's statements about symptoms and their functional effects, an ALJ must consider all of the evidence in the case record. *See* SSR 96-7p.[4] "This includes . . . the individual's own statements about the symptoms, any statements and other information provided by treating or examining physicians or psychologists . . . and any other relevant evidence in the case record." *Id.* at *1. In instances where the individual attends an administrative proceeding conducted by the adjudicator, the adjudicator may also consider his or her own observations of the individual as part of the overall evaluation of the credibility of the individual's statements. *Id.* at *5.

Plaintiff argues that (1) medical notations indicating he was doing better are not sufficient to impeach his credibility; (2) the ALJ's finding that he had only mild

---

[4] Interpretive rules, such as Social Security Regulations ("SSR"), do not have force of law but are binding on all components of the Agency. 20 C.F.R. § 402.35(b)(1); *accord Lauer v. Apfel*, 169 F.3d 489, 492 (7th Cir. 1999).

limitations in daily activities were erroneous, as he needs help with most activities and spends most of the day sitting or lying down; (3) the ALJ placed too much emphasis on an inconsistency in the testimony of Roundy and statements made his girlfriend, with Roundy testifying that he walked his son to school for protection and the girlfriend stating that he walked for therapy; (4) the ALJ failed to ask Plaintiff about the side effects of his medication; (5) the ALJ put too much emphasis on minor discrepancies in his testimony, primarily related to timing issues.

The Commissioner responds that the ALJ properly assessed Plaintiff's credibility in evaluating his RFC, citing the regulations establishing that statements of pain or other symptoms cannot form the basis of a disability finding unless there are also medical findings showing an impairment that could reasonably be expected to produce the symptoms. *See* 20 C.F.R. § 404.1529(a); SSR 96-7p. The Commissioner also points out that the ALJ discussed a number of other inconsistencies in the reports of Roundy and his girlfriend in relation to his level of daily activities.

The ALJ's credibility finding was specific, it was not patently wrong, and it will not be disturbed by this Court. The decision explained that Roundy's allegations of completely disabling symptoms were not supported by any medical evidence. And while the lack of objective evidence is not by itself reason to find Roundy's testimony to be incredible, *see Schmidt v. Barnhart*, 395 F.3d 737, 746-47 (7th Cir. 2005), he has not shown that the ALJ's decision to give greater weight to the medical evidence was unreasonable in this case.

### D.     Step Five Determination

Finally, Plaintiff argues that the ALJ did not present a complete RFC hypothetical to the VE. Plaintiff contends that the ALJ failed to properly incorporate his mental limitations into the hypotheticals, and that it was error for the ALJ to include a limitation to simple instructions, rather than concentration, persistence, and pace. *See O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010) (explaining that "terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace"). Moreover, to the extent that the ALJ did indicate moderate difficulties in concentration, persistence, or pace in the hypothetical, the VE erroneously named fast-paced jobs.

The Commissioner correctly points out that most of Plaintiff's arguments related to the step five analysis are related to the ALJ's RFC finding, which has been discussed above. Defendant further contends that Plaintiff has not shown that his depression resulted in any particular mental limitations other than those already included in the RFC.

The Court agrees with the Commissioner that the hypotheticals posed to the VE were complete with respect to the RFC limitations found in this case. The Court also is puzzled by Plaintiff's argument that the ALJ failed to offer a hypothetical with a limitation on concentration, persistence, and pace, given that his opening brief discusses the hypothetical including that very limitation.

Plaintiff's concern that the jobs the VE testified were available to Roundy were "fast-paced" is not supported by any evidence. Furthermore, Roundy was represented by counsel at the hearing, and any questions about the pace of those occupations could have been raised at that time.[5]

## CONCLUSION

For the foregoing reasons, Plaintiff John L. Roundy's motion for summary judgment [Doc. No. 15] is denied. Civil case terminated.

**SO ORDERED.**                                    **ENTERED:**

**DATE:  January 9, 2015**                   _____
                                             **HON. MARIA VALDEZ**
                                             **United States Magistrate Judge**

---

[5]  Similarly, Roundy's argument about alleged discrepancies between the VE's testimony and DOT descriptions should have been raised by counsel at the hearing.